# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Haywood Mack,<br>    Petitioner,<br><br>v.<br><br>Eric D. Wilson,<br>    Respondent. | )<br>)<br>)<br>)<br>)    1:14cv259 (AJT/JFA)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Haywood Mack, a federal inmate housed in the Eastern District of Virginia and proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prisons' ("BOP's") decision not to grant him early release upon successful completion of the Residential Drug Abuse Program ("RDAP"). On June 30, 2014, respondent filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment.[1] Petitioner was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he filed a response on July 16, 2014. Respondent then filed a reply to petitioner's response on July 23, 2014. For the reasons that follow, Respondent's Motion must be granted and petitioner's claims must be dismissed.

## I. Background

Petitioner is currently serving a 57-month sentence, entered on June 10, 2013 in the District of Vermont, for conspiracy to distribute cocaine base. See Memorandum in Support of Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Resp.'s Mem.") [Dkt. 9], Ex. 1 (Baker Decl.) ¶ 5; Att. 1. Petitioner is currently held at FCC Petersburg,

---

[1] Because respondent's Motion contained supporting exhibits, which the Court considered, this Motion will be construed as one for Summary Judgment, pursuant to Federal Rule of Civil Procedure 12(d).

and is projected to be released from confinement on August 10, 2016, through the accrual of good-time credit. See Resp.'s Mem., Ex. 1 ¶ 5. On July 15, 2013, petitioner was approved to participate in RDAP. Id. ¶ 6. RDAP is a residential drug treatment program that the BOP created to exercise its congressionally-mandated duty to provide residential drug treatment for offenders with drug addiction. See 18 U.S.C. § 3621(e)(1) ("[T]he Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment [to specified offenders] . . . ."). To qualify for admission, an inmate must "have a verifiable substance abuse disorder," must sign an agreement acknowledging his responsibility to complete the program, and must be able to complete all aspects of the program. 28 C.F.R. § 550.53(b).

After petitioner was found qualified for RDAP, BOP legal staff conducted an "offense review" to determine whether he would qualify for early release upon successful completion of the program. See Resp.'s Mem., Ex. 1 ¶ 7; see also id. Att. 5, at 1, 6. Pursuant to 28 C.F.R. § 550.55, inmates who were sentenced for a "nonviolent offense" are entitled to early release upon successful completion of RDAP. See 28 C.F.R. § 550.55(a)(1)(i)-(ii). Inmates with a current felony conviction for crimes involving the use of force, the use of a firearm, serious harm to another, or sexual abuse of minors are ineligible for early release. Id. § 550.55(b)(5). Also ineligible for early release are inmates with a "prior felony or misdemeanor conviction for . . . (i) homicide . . .; (ii) forcible rape; (iii) robbery; (iv) aggravated assault; (v) arson; (vi) kidnaping; or (vii) an offense that by its nature or conduct involves sexual abuse offenses committed upon minors." Id. § 550.55(b)(4). Under the regulations, the age of the past offense is irrelevant to the early-release eligibility calculation. See, e.g., Resp.'s Mem., Ex. 1 ¶ 13.

After a review of petitioner's Judgment and Commitment Order, presentence investigation report, and other sentencing information, BOP legal staff concluded that petitioner

was not eligible for early release upon completion of RDAP. See id. ¶ 9. BOP legal staff came to this conclusion upon learning that petitioner pled guilty to robbery in the first degree in 1991 in a New York state court. See id. BOP legal staff concluded that the elements of robbery in the first degree under New York law were sufficiently similar to the elements of robbery defined in the Federal Bureau of Investigation's Uniform Crime Reporting Program, which the BOP uses as a uniform definition of robbery governing all early release decisions. See id. ¶¶ 14-15. Accordingly, petitioner was found ineligible for early release, pursuant to 28 C.F.R. § 550.55(b)(4).

Petitioner appealed his denial of early release to the Warden. He then filed appeals to the BOP's regional office and the BOP's central office. See Resp.'s Mem., Ex. 2 (Coll Decl.), Att. 2, at unnumbered pages 1-6. Accordingly, it is uncontested that petitioner exhausted all of his claims and that this matter is ripe for review on the merits. In the instant petition, petitioner claims that the BOP's decision to not grant him early release violates his constitutional rights. He also claims that 28 C.F.R. § 550.55(b), as implemented, violates the Administrative Procedure Act ("APA").

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is

entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Analysis

#### A. BOP's Decision did not Violate Petitioner's Constitutional Rights

Petitioner alleges that the BOP's decision to deny him early release violated his constitutional rights. Specifically, he asserts that the decision violated his Fifth Amendment right against Double Jeopardy, his Due Process rights, his Equal Protection rights, and his Eighth Amendment right to be free of cruel and unusual punishment.

4

However, the decision to deny petitioner early release does not violate any of petitioner's constitutional rights. First, petitioner states that the decision to deny him early release "violated [his] right to be [free] from Double Jeopardy since [he] is being punished twice for the same offense." Memorandum of Law in Support of Writ of Habeas Corpus ("Pet.'s Mem.") [Dtk. 1-2], at 4. However, the Double Jeopardy Clause protects only against a second prosecution for the same offense after either a conviction or acquittal and multiple punishments for the same offense. See United States v. Halper, 490 U.S. 435, 400 (1989), abrogated on other grounds by Hudson v. United States, 522 U.S. 93 (1997). Although petitioner seems to imply that the use of his past conviction for robbery to disqualify him for early release constitutes multiple punishments for his past conviction, see Pet.'s Mem., at 3-4, petitioner has not been subject to any additional punishment for this offense. This past offense merely precludes him from the benefit of being released early from his current sentence.

Second, petitioner alleges that the denial of his early release violates his Due Process rights. The protections of the Due Process Clause, however, only attach to vested liberty interests. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Petitioner has no constitutionally-protected liberty interest in early release from his federal sentence. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Accordingly, BOP did not deny him any Due Process protections by its refusal to grant his early release.

Third, petitioner states that his Equal Protection rights were violated because, "prior to 1997, the BOP was allowing inmates with prior offenses to receive the time off [due to a previous policy]." Petitioner's Response to Government's Motion for Summary Judgment

("Pet.'s Resp.") [Dkt. 10], at 3. He seems to state that, because he was convicted of robbery in 1991, he should be treated the same as other offenders convicted of robbery in 1991. To state an Equal Protection violation, however, petitioner must show that he "has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful deliberation." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Petitioner is currently "similarly situated" to other inmates in federal custody who have completed the RDAP program and have a past conviction of robbery. There is no indication that he has been treated any differently than these individuals. Thus, his Equal Protection claim has no merit.

Last, petitioner states that the denial of his early release constitutes cruel and unusual punishment. To establish a claim for cruel and unusual punishment due to conditions of confinement, however, petitioner must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). Petitioner has not provided any facts supporting his allegations of cruel and unusual punishment. Accordingly, his Eighth Amendment claim must be dismissed.

### B. BOP's Policy does not Violate the Administrative Procedure Act

Petitioner also alleges that 28 C.F.R. § 550.55(b)(4), disqualifying him from early release due to his prior conviction, violates the APA. He specifically states that the categorical exclusion of inmates with his prior conviction from early release is an arbitrary and capricious interpretation of 18 U.S.C. § 3621(e). Petitioner argues that, under an individualized analysis, he would not be excluded from early release, due to the age and nonviolent nature of his conviction.

Petitioner's arguments have no merit. Determining whether an agency has validly interpreted its own statute under the APA is governed by the familiar two-step process laid out in Chevron, U.S.A. v. Natural Res. Def. Council, 467 U.S. 837 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; . . . [but] if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible interpretation of the statute." Id. at 842-43. Review under the APA is deferential, see Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983), and agency action only be overturned if the agency action is, as relevant here, "arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law;" in excess of the agency's legal authority; or in violation of required procedure." 5 U.S.C. § 706(2)(A)-(D).

Here, although Congress clearly intended, in § 3621(e), for the BOP to implement substance abuse treatment programs, the statute is silent as to the "specific issue" of which individual inmates may be entitled to early release. Section 3621(e)(2)(B) states that the BOP "may" reduce the term of imprisonment of any individual convicted of a "nonviolent offense." The law does not, however, specifically define the term. This lack of a specific definition thus gives the BOP discretion to define the term, see Chevron, 467 U.S. at 843-44, and the BOP has done so several times since 1995, in the provisions of 28 C.F.R. §§ 550.50-.55. The specific history of these definitions is not relevant to this litigation. However, the BOP's discretion to determine which inmates qualify for early release is broad. See Lopez v. Davis, 531 U.S. 230, 239-40 (2001).

This discretion extends, contrary to petitioner's representation, to the categorical exclusion of specific classes of inmates. In Lopez, the U.S. Supreme Court held that the BOP, in

7

implementing the provisions of 28 C.F.R. § 550.55, had the power to make both individualized and categorical decisions. Lopez, 531 U.S. at 243-44 (quoting Am. Hosp. Ass'n. v. NLRB, 499 U.S. 606, 612 (1991)) ("'[E]ven if a statutory scheme requires individualized determinations,' which this scheme does not, 'the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.'"). The Ninth Circuit applied this same logic to the specific provision here, 28 C.F.R. § 550.555(b)(4), finding that BOP had the authority to categorically exclude inmates with certain types of past convictions, including robbery, from early release. See Peck v. Thomas, 697 F.3d 767, 773-74 (9th Cir. 2012).

The Ninth Circuit also found that the BOP's decision to categorically exclude certain classes of inmates was supported by the administrative record. This Court agrees. In 2004, the BOP expanded the list of disqualifying past convictions to include homicide, forcible rape, robbery, aggravated assault, arson, and kidnapping. The BOP stated that:

> In exercising the Director's statutory discretion, we considered [these crimes], as identified in the Uniform Crime Reporting Program (UCR), which is a collective effort of city, county, state, tribal, and federal law enforcement agencies to present a nationwide view on crime. [These crimes] are identified in the UCR due to their inherently violent nature and particular danger to the public.
>
> The Direct of the Bureau exercises discretion to deny early release eligibility to inmates who have a prior felony or misdemeanor conviction for these offenses because commission of such offenses rationally reflects the view that such inmates displayed readiness to endanger the public.

Drug Abuse Treatment Program: Subpart Revision and Clarification, 74 Fed. Reg. 1892, 1894 (Jan. 14, 2009). The BOP's justification for its decision was rational and based on a reasonable exercise of the agency's discretion. Accordingly, this Court will not substitute its judgment for that of the agency. Motor Vehicle Mfrs. Ass'n., 463 U.S. at 29.

The BOP's decision to categorically exclude a certain class of inmates from early release therefore does not violate the APA, and it was not required to make an individualized determination of petitioner's status.

## IV. Conclusion

For the above stated reasons, respondent's Motion for Summary Judgment will be granted. An appropriate Judgment and Order shall issue.

Entered this 4th day of March 2015.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge